ACCEPTED
08-20-00171-cv
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
4/22/2021 2:59 PM
ELIZABETH G. FLORES
CLERK



816 Congress Avenue, Suite 1900
Austin, Texas 78701
512.322.5800 p
512.472.0532 f

lglawfirm.com

Mr. de la Fuente's Direct Line: (512) 322-5849
Email:  jdelafuente@lglawfirm.com

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
4/22/2021 2:59:10 PM
ELIZABETH G. FLORES
Clerk

April 22, 2021

### *Via E-File*

Ms. Elizabeth G. Flores
Court of Appeals
Eighth District of Texas
500 East San Antonio Avenue
Suite 1203
El Paso, Texas 79901-2408

> Re:  Court of Appeals Number:      08-20-00171-CV
> Trial Court Case Number:      18-0998-C395
>
> City of Georgetown, Texas; Dale Ross, Mayor of the City of Georgetown; and David Morgan, City Manager of the City of Georgetown v. Terrill W. Putnam

Dear Ms. Flores:

The above-referenced action was orally argued and submitted on April 22, 2021 to the Justices of this Court.  Please circulate this correspondence to each of the Justices.

We are providing additional courtesy copies of recent post-briefing cases for the Court regarding the above-referenced matter, as referenced in oral argument:

*Qatar Found. for Educ., Sci. & Cmty. Dev. v. Zachor Legal Inst.*, 03-20-00129-CV, 2021 WL 1418988 (Tex. App.—Austin Apr. 15, 2021, no pet. h.);

*Univ. of Tex. Rio Grande Valley v. Hernandez*, 13-19-00180-CV, 2021 WL 375429 (Tex. App.—Corpus Christi Feb. 4, 2021, no pet. h.);

*City of Austin v. Doe*, 03-20-00136-CV, 2020 WL 7703126 (Tex. App.—Austin Dec. 29, 2020, no pet.); and

*Franklin Ctr. for Gov't v. Univ. of Tex. Sys.*, 03-19-00362-CV, 2020 WL 7640146 (Tex. App.—Austin Dec. 22, 2020, no pet.)

Lloyd Gosselink Rochelle & Townsend, P.C.

Copies of the cases are attached as Exhibits A – D with this correspondence for the convenience of the reviewing Justices.

Sincerely,

*/s/ Jose E. de la Fuente*
Jose E. de la Fuente

JEF/kwm
Enclosure

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 22nd Day of April, 2021, a true and correct copy of the foregoing document has been served on the following counsel of record, in accordance with the Texas Rules of Appellate Procedure, via electronic transmission:

Robert Henneke
rhenneke@texaspolicy.com
Texas Public Policy Foundation

Michael E. Lovins
Michael@LTLegalTeam.com
Lovins Trosclair, PLLC

**COUNSEL FOR APPELLEES**

*/s/ Jose E. de la Fuente*
JOSE E. de la FUENTE

# EXHIBIT A

2021 WL 1418988
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT
BEEN RELEASED FOR PUBLICATION
IN THE PERMANENT LAW REPORTS.
UNTIL RELEASED, IT IS SUBJECT
TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas, Austin.

QATAR FOUNDATION FOR
EDUCATION, SCIENCE AND
COMMUNITY DEVELOPMENT
and Ken Paxton, Texas
Attorney General, Appellants
v.
ZACHOR LEGAL
INSTITUTE, Appellee

NO. 03-20-00129-CV
|
Filed: April 15, 2021

FROM THE 200TH DISTRICT COURT OF
TRAVIS COUNTY, NO. D-1-GN-18-006240,
THE HONORABLE KARIN CRUMP, JUDGE
PRESIDING

**Attorneys and Law Firms**

Kimberly L. Fuchs, Jennifer S. Riggs, Austin, for
Appellants Ken Paxton, Texas Attorney General.

Anna M. Baker, Houston, David P. Long, Amanda
Price, Houston, Wallace B. Jefferson, Austin, for
Appellants Qatar Foundation for Education, Science
and Community Development.

Jennifer S. Riggs, Nicole Cordoba, Dale Wainwright,
Austin, for Appellee.

Before Chief Justice Byrne, Justices Baker and Smith

**OPINION**

Darlene Byrne, Chief Justice

**\*1** This is an appeal from the district court's
order sustaining Zachor Legal Institute's plea to the
jurisdiction in Qatar Foundation's suit under the Texas
Public Information Act (TPIA). Qatar Foundation
filed suit against the Attorney General to prevent the
disclosure of information in response to a request
for public information that Zachor Legal Institute
had submitted to Texas A&M University. Based
on our conclusion that the TPIA waives sovereign
immunity for Qatar Foundation's suit, we reverse the
district court's order and remand the case for further
proceedings.

**BACKGROUND**

Qatar Foundation is a private, non-profit organization
headquartered in Doha, Qatar. Its self-described
mission is "to lead human, social, and economic
development in Qatar through investment in education,
science, and research." As part of that mission,
Qatar Foundation partners with universities around the
world, including Texas A&M, to open and operate
branch campuses at its "Education City" in Qatar.

In May 2018, Zachor Legal Institute submitted a
request for public information to Texas A&M for a
"summary of all amounts of funding or donations
received by or on behalf of [Texas A&M] from the
government of Qatar and/or agencies or subdivision
of the government of Qatar between January 1,
2013 and May 22, 2018."[1] *See* Tex. Gov't Code §
552.021 (requiring that public information be made
available to public). Texas A&M, which did not
notify Qatar Foundation about the request, asked the
Attorney General for a decision about whether it
had to release information that "identifies donors to
the university." *See id.* §§ 552.1235(a) (excepting
from disclosure information disclosing the identity of
person, other than governmental body, making a gift,
grant, or donation of money to institution of higher
learning), .301 (directing governmental body seeking
to withhold information to request Attorney General
opinion), .305(d) (directing governmental body to
make good-faith effort to notify third party of request
involving privacy or property interests). The Attorney

General's subsequent letter ruling, issued in August 2018, concluded that Texas A&M "must withhold the donors' identifying information" under section 552.1235 but directed it to "release the remaining information," which included information related to contractual payments Qatar Foundation had made to Texas A&M. *See* Tex. Att'y Gen. OR2018-20240. Texas A&M did not challenge the letter ruling.

Qatar Foundation, which maintains that it was not aware of Zachor Legal Institute's request until two months after the Attorney General's letter ruling issued, filed the underlying suit for declaratory judgment against the Attorney General in October 2018. In its suit, Qatar Foundation asserted and sought declarations that information responsive to the request is protected from disclosure under the TPIA because the information constitutes trade secrets and confidential commercial or financial information and because it reveals the amount of the grant or donation and the identity of the donor. *See id.* §§ 552.110(a)–(b) (excepting trade secrets and certain commercial and financial information from disclosure), .1235(a). Qatar Foundation relied on section 552.325 as the asserted basis for jurisdiction over its suit. *See id.* § 552.325(a) ("A governmental body, officer for public information, or other person or entity that files a suit seeking to withhold information from a requestor may not file suit against the person requesting the information."); *Boeing Co. v. Paxton*, 466 S.W.3d 831, 833, 839 (Tex. 2015) (recognizing that section 552.325 provides judicial remedy to third party seeking to withhold requested information). Zachor Legal Institute intervened in the suit. *See* Tex. Gov't Code § 552.325(a).

**\*2** Soon after Qatar Foundation filed its suit, Zachor Legal Institute submitted a second TPIA request, this time asking for "[a]ll correspondence and communications between [Texas A&M] and third parties relating to [the first request for information]" and "[a]ll communications relating to [Texas A&M] funding, programs and activities between [Texas A&M] and the parties listed in [the first request for information] between 2013 and the current date." Texas A&M notified Qatar Foundation and asked the Attorney General for an opinion about whether the requested information is excepted from disclosure under TPIA sections 552.104, 552.110,

and 552.1235. *See id.* §§ 552.104 (excepting from disclosure information related to competition or bidding), .110, .1235. Qatar Foundation sent the Attorney General a detailed letter explaining why its negotiations and agreements with partner universities, including Texas A&M, and information regarding the amounts and types of funding are exempt from disclosure under sections 552.104, 552.110, and 552.1235. *See id.* § 552.305(b) (allowing person whose privacy or property interests are involved in TPIA request to submit to Attorney General reasons why the information should be withheld or released).

In a second letter ruling, the Attorney General concluded that Qatar Foundation had established that release of the requested information "would give an advantage to a competitor or bidder," *see id.* § 552.104(a), and directed Texas A&M to withhold the information. *See* Tex. Att'y Gen. OR2019-01288. The Attorney General also noted that because some of the information responsive to Zachor Legal Institute's request may be affected by his first letter ruling, he would defer to the trial court to make its own independent determination regarding disclosure: "[The Attorney General] will allow the trial court to resolve the issue of whether the information that is the subject of the pending litigation must be released to the public." *Id.*

Zachor Legal Institute filed a plea to the jurisdiction in the underlying case, arguing that the district court lacks jurisdiction over Qatar Foundation's suit because "[n]o provision of the TPIA authorizes a third party that asserts privacy or property interests to file a lawsuit to challenge a decision of the Attorney General." Both Qatar Foundation and the Attorney General filed briefs opposing Zachor Legal Institute's jurisdictional argument, but the district court sustained Zachor Legal Institute's plea to the jurisdiction and dismissed Qatar Foundation's case. Qatar Foundation appeals.

## ANALYSIS

In a single issue, Qatar Foundation asserts, and the Attorney General agrees, that the district court erred in sustaining Zachor Legal Institute's plea to the jurisdiction because the district court has jurisdiction over an action brought against the Attorney General

by a third party who seeks to withhold protected information from disclosure under the TPIA. Zachor Legal Institute contends that the district court did not err because the TPIA does not waive sovereign immunity for Qatar Foundation's suit against the Attorney General. Based on the text of the TPIA and Texas Supreme Court precedent, we agree with Qatar Foundation and the Attorney General that the district court has jurisdiction over Qatar Foundation's suit, and thus erred in sustaining Zachor Legal Institute's plea to the jurisdiction.

Sovereign immunity protects the State of Texas and its agencies from suit and liability. *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). The Legislature may waive immunity by statute, but it must do so by clear and unambiguous language. Tex. Gov't Code § 311.034; *Hillman v. Nueces County*, 579 S.W.3d 354, 360 (Tex. 2019) ("To waive governmental immunity, a statute must use 'clear and unambiguous language' expressing that intent." (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29 (Tex. 2006))). Whether the TPIA waives sovereign immunity is a matter of statutory construction, which is a question of law that we review de novo. *See Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). Procedurally, the assertion of sovereign immunity implicates the trial court's jurisdiction and is properly asserted in a plea to the jurisdiction. *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). Where, as here, the material jurisdictional facts are undisputed and the analysis of the jurisdictional plea turns on an issue of statutory construction, the trial court rules on the plea to the jurisdiction as a matter of law. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 228.

 **\*3**  The TPIA "guarantees access to public information, subject to certain exceptions." *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011). Public information includes information that is collected, assembled, or maintained by or for a governmental body. Tex. Gov't Code § 552.002(a). Such information is available by request unless an exception applies. *In re City of*

*Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001) (orig. proceeding).

A request for public information typically involves two parties, the governmental body holding the information and the person requesting it. The governmental body must promptly ask the Attorney General for a ruling if it seeks to withhold the information. *Boeing*, 466 S.W.3d at 833 (citing Tex. Gov't Code § 522.301). Because the government gathers information from people and companies doing business in Texas, some requests may also implicate privacy or property interests of third parties. *Id.* When a request involves this type of information, the Texas Supreme Court has explained that the TPIA "permits the third party to raise the issue and any applicable exception to the information's disclosure with the Attorney General, *or in district court*, or both." *Id.* (emphasis added) (citing Tex. Gov't Code §§ 552.305(b), .325). Qatar Foundation, alleging that the request at issue here involves information that implicated its privacy and property interests, filed this suit against the Attorney General under section 552.325. Zachor Legal Institute contends that the TPIA does not clearly and unambiguously waive sovereign immunity for Qatar Foundation's suit, and thus the district court lacks jurisdiction. *See Miranda*, 133 S.W.3d at 224 ("In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit.").

When deciding whether a statute clearly and unambiguously waives sovereign immunity, we:

(1) consider "whether the statutory provisions, even if not a model of clarity, waive immunity without doubt;"

(2) resolve any "ambiguity as to waiver ... in favor of retaining immunity;"

(3) generally find waiver "if the Legislature requires that the [governmental] entity be joined in a lawsuit even though the entity would otherwise be immune from suit;"

(4) consider whether the legislature "provided an objective limitation on the governmental entity's potential liability"; and

(5) consider "whether the statutory provisions would serve any purpose absent a waiver of immunity." *Hillman*, 579 S.W.3d at 360 (citing *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009)). Although section 552.325 is no model of clarity, it waives immunity for Qatar Foundation's suit by recognizing, as the supreme court explained in *Boeing*, that a party other than a governmental body may file a suit seeking to withhold information requested under the TPIA:

**552.325 Parties to Suit Seeking to Withhold Information**

(a) A governmental body, officer for public information, *or other person or entity that files a suit seeking to withhold information from a requestor* may not file suit against the person requesting the information. The requestor is entitled to intervene in the suit.

 **\*4**  (b) The governmental body, officer for public information, *or other person or entity that files the suit* shall demonstrate to the court that the governmental body, officer for public information, or other person or entity made a timely good faith effort to inform the requestor.... of:

(1) the existence of the suit, including the subject matter and ...;

(2) the requestor's right to intervene in the suit or to choose to not participate in the suit;

(3) the fact that the suit is against the attorney general in Travis County district court; and

(4) the address and phone number of the office of the attorney general.

Tex. Gov't Code § 552.325 (emphases added); *see also Boeing*, 466 S.W.3d at 838 (concluding "Legislature intended private parties ... to have ... the right to protect their interest in the information protected by section 552.104 through the judicial remedy provided by section 552.325" (citations omitted)). Further, the fact that the provision requires that a suit seeking to withhold information be filed against the Attorney General makes clear that the Legislature intended to waive immunity for such suits. *See Hillman*, 579 S.W.3d at 360 (noting that courts generally find waiver

if the Legislature requires that governmental entity be joined in a lawsuit even though it would otherwise be immune); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–698 (Tex. 2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity."). Also, because the remedy for a suit under this provision is a declaration that the requested information is not subject to disclosure and because the TPIA does not authorize attorney fees for this type of suit, there is an objective limitation on the governmental entity's potential liability. *See* Tex. Gov't Code § 552.323 (authorizing attorney fees for two types of suits under the TPIA, but not for suit under section 552.325); *Hillman*, 579 S.W.3d at 360 (in deciding whether immunity has been waived, court must consider whether legislature "provided an objective limitation on government's potential liability"). Finally, if section 552.325 does not waive immunity for third-party suits seeking to withhold information, the language referencing "other person or entity" filing a suit would serve no purpose. *See Hillman*, 579 S.W.3d at 360 (in determining waiver, courts must "consider whether the statutory provisions would serve any purpose absent a waiver of immunity"); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 134 (Tex. 2019) ("Every word in a statute is presumed to have a purpose and should be given effect if reasonable and possible.").

Zachor Legal Institute concedes that section 552.325 waives sovereign immunity but insists that it does so only for suits brought by a governmental body, not by a third party. In support of this argument, Zachor Legal Institute contends that section 552.325 merely describes how the waiver of immunity in section 552.324 is to be exercised. Section 552.324, titled "Suit by Governmental Body," specifies that a suit by a governmental body seeking to withhold information may only seek declaratory relief from compliance with an Attorney General opinion, that it must be filed against the Attorney General in Travis County district court within thirty days of the Attorney General's decision, and that if the governmental body does not file such a suit, it must comply with the Attorney General's decision. *See* Tex. Gov't Code § 552.324. Section 552.325, on the other hand, recognizes that persons or entities other than a governmental body

may file a suit seeking to withhold information from a requestor, prohibits filing such a suit against a requestor, directs that these suits be filed against the Attorney General, and describes how requestors are to be notified and treated in these types of suits. *See id.* § 552.325. In sum, although the two provisions might overlap, section 552.324 addresses only suits by governmental bodies seeking to withhold information, while section 552.325 addresses all suits seeking to withhold information from a requestor and, most important here, recognizes that parties other than a governmental body may file such suits. For that reason, we would impermissibly have to decide that section 552.325's reference to "other person or entity" has no purpose if we were to accept Zachor Legal Institute's interpretation. *See Creative Oil & Gas*, 591 S.W.3d at 134 ("Every word in a statute is presumed to have a purpose and should be given effect if reasonable and possible."). We would also have to ignore the Texas Supreme Court's conclusion that section 552.325 authorizes third-party suits seeking to withhold protected information. *Boeing*, 466 S.W.3d at 833, 838.[2]

**\*5** Zachor Legal Institute argues that the only available relief for a third party seeking to withhold protected information from a requestor is to submit comments to the Attorney General in response to a governmental body's request for an Attorney General opinion, *see* Tex. Gov't Code § 552.305(b) (allowing person whose interests may be involved, to submit to Attorney General "reasons why the information should be withheld or released"), or to file suit for declaratory or injunctive relief against the governmental body under section 552.3215, *see id.* § 552.3215 (allowing victim of TPIA violation to complain to appropriate district or county attorney or to Attorney General and authorizing district or county attorney or Attorney General to file suit against governmental body in response to complaint). Nothing in the text of the TPIA, however, suggests that these are the exclusive remedies for such parties and, as discussed above, the Texas Supreme Court has explained to the contrary that the TPIA allows third parties to raise privacy and property issues "with the Attorney General, or in district court, or both." *Boeing*, 466 S.W.3d at 833 (citing Tex. Gov't Code §§ 552.305(b), .325). We also note that section 552.3215 does not offer a meaningful remedy to a party seeking to withhold information

because it addresses a "victim of a violation of [the TPIA]" by a governmental body. *See id.* § 552.3215. A party seeking to withhold protected information is not yet, and may never be, a victim of a TPIA violation involving the release of that information. Only when the governmental body improperly releases the information would a party seeking to withhold information potentially fall under section 552.3215, but at that point the damage would have been done.

In conflict with its argument that the TPIA waives sovereign immunity only for suits by a governmental body, Zachor Legal Institute also suggests that Qatar Foundation could have overcome the sovereign-immunity barrier by including Texas A&M in its suit. But section 552.325's only party-specific requirements are that the suit be brought against the Attorney General and that the requestor may not be named as a party. *See* Tex. Gov't Code § 552.325. Nor is there any requirement that the governmental body be named party to the suit because the core issue in such a suit, and thus the subject of any resulting judgment, is whether the requested information can be withheld. *See id.*; *see also id.* §§ 552.104 (exempting from disclosure information that provides advantage to competitor or bidder), .110 (exempting from disclosure trade secrets and confidential or financial information). "[W]hether information is subject to the [TPIA] and whether an exception to disclosure applies to the information are questions of law." *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

In a final argument, Zachor Legal Institute contends that the district court lacks subject-matter jurisdiction over Qatar Foundation's suit because Texas A&M, as the governmental body holding the requested information, is an indispensable party to the suit, and as a result, the district court could not give adequate relief without Texas A&M's joinder. *See* Tex. R. Civ. P. 39(a) (governing joinder of persons needed for just adjudication). The trial court cannot give complete relief without Texas A&M as a party, Zachor Legal Institute argues, because Texas A&M, not the Attorney General, has the duty to produce public information and because Texas A&M is now under a mandatory duty to disclose the requested information given that it did not file a lawsuit challenging the Attorney General's decision. *See* Tex. Gov't Code

552.324(b). However, even assuming Zachor Legal Institute's assertions are correct, the Texas Supreme Court has indicated that the failure to join a necessary party does not deprive the trial court of subject-matter jurisdiction; instead, it raises the prudential question of whether the trial court should have refused to proceed in the necessary party's absence. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162–63 (Tex. 2004); *see also id.* at 163 (holding that party had waived Rule 39 issue by failing to raise it before trial court); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (noting that subject-matter jurisdiction "is never presumed and cannot be waived"); *Barrera v. Chererco, LLC*, No. 04-16-00235-CV, 2017 WL 943436, at *3 (Tex. App.—San Antonio Mar. 8, 2017, no pet.) ("The failure to join a person whose interests could be affected by the trial court's judgment or declaration does not deprive a trial court of jurisdiction."); *Mining v. Hays Cnty. Bail Bond Bd.*, No. 03-05-00448-CV, 2006 WL 952402, at *5 (Tex. App.—Austin Apr. 14, 2006, no pet.) (noting that in *Brooks* "the supreme court has more recently held that subject matter jurisdiction is rarely implicated by the failure to join a party required under section 37.006(a) of the declaratory judgment act or rule of civil procedure 39"). Here, because we are remanding, Zachor Legal Institute can raise the Rule 39 issue with the trial court to allow it to determine whether it should refuse to enter a judgment or declaration in Texas A&M's absence. *See Brooks*, 141 S.W.3d at 163.

 **\*6** Based on the text of the TPIA and the supreme court's decision in *Boeing*, we hold that the TPIA waives sovereign immunity for Qatar Foundation's suit against the Attorney General. Because immunity has been waived, the district court has jurisdiction over Qatar Foundation's suit and, thus, erred in dismissing Qatar Foundation's suit. Accordingly, we sustain Qatar Foundation's sole issue on appeal.

## CONCLUSION

Having sustained Qatar Foundation's issue, we reverse the district court's judgment and remand the case to the district court for further proceedings.

## All Citations

--- S.W.3d ----, 2021 WL 1418988

## Footnotes

1  The request characterized Qatar Foundation as an agency or subdivision of the Qatari government. Qatar Foundation disputes this characterization.

2  Zachor Legal Institute maintains that the Texas Supreme Court's statements regarding section 552.325 and third-party rights in *Boeing* are dicta, and thus do not control our analysis here, because jurisdiction was not an issue in that case. We disagree that the statements are dicta. In holding that Boeing could invoke section 552.104's exception, the supreme court explicitly relied on Boeing's being able to protect its privacy and property interests through the "judicial remedy provided in section 552.325." *Boeing Co. v. Paxton*, 466 S.W.3d 831, 839 (Tex. 2015). We cannot disregard as dicta the supreme court's discussion of an issue that supports its ultimate conclusion. *See Texas Farm Bureau Mut. Ins. v. Sturrock*, 146 S.W.3d 123, 127–28 (Tex. 2004) (holding that its discussion of an issue that supports ultimate conclusion is not dicta).

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

**University of Texas Rio Grande Valley v. Hernandez, Not Reported in S.W. Rptr. (2021)**

2021 WL 375429

2021 WL 375429
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

The UNIVERSITY OF TEXAS RIO
GRANDE VALLEY, Appellant,
v.
Leila HERNANDEZ and William
D. Mount Jr., Appellees.

NUMBER 13-19-00180-CV
|
Delivered and filed February 4, 2021

**On appeal from the 92nd District Court of Hidalgo County, Texas.**

**Attorneys and Law Firms**

William D. Mount Jr., Katie P. Klein, for Appellees.

Jennifer S. Jackson, for Appellant.

Before Justices Benavides, Longoria, and Tijerina

**MEMORANDUM OPINION**

Memorandum Opinion by Justice Tijerina

**\*1** In this interlocutory appeal, appellant the University of Texas Rio Grande Valley (UTRGV), challenges the trial court's denial of its supplemental plea the jurisdiction in a case brought by appellees Leila Hernandez and William D. Mount, Jr. under the Public Information Act (PIA). By two issues, UTRGV claims the trial court erred in dismissing its plea because (1) appellees' PIA claim is moot and (2) appellees are not entitled to attorney's fees under the PIA. We reverse and render.

**I. Background**

On December 13, 2016, Hernandez submitted a public information request (PIR) to UTRGV under the PIA requesting documents related to an investigation that UTRGV was conducting on her.[1] UTRGV informed Hernandez in a letter dated January 5, 2017, that "one or more exceptions to the disclosure under the [PIA] may apply to some in or all of the responsive information," and that UTRGV forwarded the PIR to the Attorney General's Office (AG) for a determination as to whether the information must be released. That same day, UTRGV also wrote the AG asking whether certain records should be produced in response to Hernandez's request.

Before the AG responded to UTRGV's letter, Hernandez filed a writ of mandamus in the trial court, alleging that UTRGV violated the PIA by failing to timely respond to her request.[2] *See* Tex. Gov't Code Ann. § 552.301 (providing that within ten days of receipt of a PIR, the governmental body must ask for a decision from the AG about whether the information may be withheld). She also requested attorney's fees stating she has "incurred substantial attorney's fees in the prosecution of this action and [she] has a right to obtain those fees."

On March 15, 2017, the AG ruled that some information needed to be produced, some information could be redacted, and some information should be withheld. UTRGV sent Hernandez the requested documents in accordance with the AG's ruling.[3] Hernandez amended her petition and Mount, her attorney, joined as a party after UTRGV asserted that Hernandez did not qualify as a "requestor" under the PIA. UTRGV subsequently filed a plea to the jurisdiction and a motion for partial summary judgment. UTRGV and appellees filed competing motions for summary judgment, and UTRGV filed a second plea to the jurisdiction and a second motion for summary judgment. The trial court did not rule on these motions.

**\*2** On October 26, 2018, UTRGV produced more information and filed a supplemental plea to the jurisdiction, seeking to dismiss appellees' case and request for attorney's fees as moot because it had "produced the responsive documents earlier today," and therefore, "there is no live case or controversy before the court." Appellees responded that UTRGV

**University of Texas Rio Grande Valley v. Hernandez, Not Reported in S.W. Rptr. (2021)**

2021 WL 375429

had not produced all the information; namely, UTRGV failed to produce a video recording and pictures concerning Hernandez. UTRGV subsequently produced the requested video recording and pictures on January 17, 2019 and re-urged its motion stating the production of information mooted appellees' claim and request for attorney's fees. The trial court held an evidentiary hearing on UTRGV's supplemental plea to the jurisdiction and denied UTRGV's plea. UTRGV filed this interlocutory appeal.

## II. Public Information Act

UTRGV contends that the trial court erred when it denied its supplemental plea to the jurisdiction because appellees' PIA claim was rendered moot as a result of UTRGV's production of the requested information.

### A. Standard of Review

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The existence of subject matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). When a plea to the jurisdiction " 'challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (quoting *Tex. Dep't & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

### B. Applicable Law

#### 1. Mootness

"The mootness doctrine limits courts to deciding cases in which an actual controversy exists." *Hous. Chronicle Publ'g Co. v. Thomas*, 196 S.W.3d 396,

399 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *F.D.I.C. v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Kessling v. Friendswood Indep. School Dist.*, 302 S.W.3d 373, 380 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). "If a controversy ceases to exist—'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'—the case becomes moot." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). If a case becomes moot, the court loses jurisdiction over the claims. *Id.*

#### 2. Public Information Act

Under the PIA, upon a request for public information, a governmental body must promptly produce public information for inspection, duplication, or both. Tex. Gov't Code Ann. § 552.221. Public information is any information which, under a law or ordinance or in connection with the transaction of official business, is collected, assembled or maintained by or for a governmental body and the governmental body owns the information or has a right of access to it. *Id.* § 552.002; *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

If a governmental body receives a PIR for information that it wishes to withhold from public disclosure and believes is excepted from disclosure under the PIA, within ten days of receipt of the written request, the governmental body must ask for a decision from the AG about whether the information may be withheld. *See* Tex. Gov't Code Ann. § 552.301(a). "Unless the information requested is confidential by law, the governmental body may disclose the requested information to the public or to the requestor before the attorney general makes a final determination that the requested information is public or, if suit is filed under this chapter, before a final determination that the requested information is public has been made by the court with jurisdiction over the suit." *Id.* § 552.303(a).

**\*3** Section 552.321 of the PIA waives sovereign immunity allowing a requestor to file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the

University of Texas Rio Grande Valley v. Hernandez, Not Reported in S.W. Rptr. (2021)

2021 WL 375429

governmental body refuses to request an AG decision or refuses to supply public information or information that the AG has determined is not excepted from disclosure. *Id.* § 552.321(a). However, "the legislature has not addressed or provided a waiver of sovereign immunity as to a claim that is based on a governmental body's delay or its motives for delaying the release of information that is subject to disclosure under the PIA." *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 29 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (quoting *Gates v. Tex. Dep't of Family and Protective Servs.*, No. 03-15-00631-CV, 2016 WL 3521888, at *4 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.)).

### C. Analysis

Here, the uncontroverted evidence established that UTRGV released the video recording and photographs that Hernandez requested. After receiving the information, appellees continued to allege the case is not moot because "not all information has been produced." However, appellees did not specify what public information UTRGV is withholding that is responsive to Hernandez's request or provide evidence to support their claim that UTRGV is withholding information. *See Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues."). Instead, appellees urge us to conclude that because UTRGV produced the video recording and photographs after it claimed there were no more documents to produce, there must be more documents in UTRGV's possession relevant to Hernandez's request. We decline to make such an inference. Stated another way, appellees did not raise a fact question on the issue of whether UTRGV was refusing or unwilling to supply the public information. *See City of El Paso v. Abbott*, 444 S.W.3d 315, 326 (Tex. App.—Austin 2014, pet denied) (holding that even assuming the city had not disclosed all responsive documents, the bottom line for purposes of appellate review of the city's plea to the jurisdiction is that the plaintiff did not offer any evidence to controvert or question the city's conclusive evidence that it searched extensively for the requested documents and turned over the same). Moreover, UTRGV's delay in producing information is not evidence that it has not complied with the PIA. *See Gates*, 2016 WL 3521888, at *4 (providing that the legislature has not waived sovereign immunity based on a governmental body's

delay in the release of information subject to disclosure under the PIA). On this basis, we sustain UTRGV's first issue and conclude UTRGV's production of documents mooted appellees' PIA case.[4] *See* Tex. Gov't Code Ann. § 552.321(a); *Nehls*, 522 S.W.3d at 30 (holding that "appellants' release of information eliminated the justiciable controversy that formed the basis of [plaintiffs'] claim"); *Abbott*, 444 S.W.3d at 325–26 (reversing the trial court's denial of the city's plea to the jurisdiction because it lacked subject matter jurisdiction over the plaintiff's mandamus claim when the city proved it turned over the responsive documents"); *Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 704–06 (Tex. App.—Austin 2013, no pet.) (holding a plaintiff's PIA claim is mooted by the governmental entity's production of the requested information); *Gates*, 2016 WL 3521888, at *5 (concluding that a PIA claim is moot by the government official's release of requested information); *Dall. Morning News, Inc. v. City of Arlington*, No. 03-10-00192-CV, 2011 WL 182886, at *3–4 (Tex. App.—Austin Jan. 21, 2011, no pet.) (mem. op.) (holding a PIA controversy moot where the city voluntarily released the requested document).

### III. Attorney's Fees

**\*4** By its second issue, UTRGV claims that the trial court erred in denying its plea to the jurisdiction because appellees' related claim for attorney's fees was also rendered moot.

In an action brought under the PIA, "the court shall assess costs of litigation and reasonable attorney['s] fees incurred by a plaintiff who substantially prevails." Tex. Gov't Code Ann. § 552.323(a). To qualify as a "prevailing party," a plaintiff must obtain (1) judicially sanctioned relief on the merits of its claim that (2) materially alters the legal relationship between the parties such as a damages award, injunctive or declaratory relief, or consent decree or settlement in the party's favor. *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653–55 (Tex. 2009). Several courts of appeals in Texas have held that a requestor whose PIA claim is rendered moot by the voluntary production of documents by a governmental body during the pendency of suits does not "substantially prevail" under the PIA. *See Nehls*,

522 S.W.3d at 32; *Giggleman*, 408 S.W.3d at 703–06; *City of Dallas v. Dall. Morning News, L.P.*, 281 S.W.3d 708, 718 (Tex. App.—Dallas 2009, no pet.); *see also Gates*, 2016 WL 3521888, at \*7–8; *Hudson v. Paxton*, No. 03-13-00368-CV, 2015 WL 739605, at \*3–5 (Tex. App.—Austin Feb. 20, 2015, pet. denied) (mem. op.); *Brazee v. City of Spur*, No. 07-12-00405-CV, 2014 WL 2810339, at \*3 (Tex. App.—Amarillo June 10, 2014, no pet.) (mem. op.); *Arlington*, 2011 WL 182886, at \*3–4.

Because appellees' mandamus claim is moot as a matter of law, their accompanying claim for attorney's fees under § 552.323(a) is likewise rendered moot. *See Giggleman*, 408 S.W.3d at 706 (holding that the pending attorney's fees claims did not preserve live controversy because the failure to obtain affirmative relief precluded an attorney's fees award predicated on the requirement that party "substantially prevail"). Accordingly, there is no "live" issue regarding whether appellees are entitled to attorney's fees under the PIA. *See Nehls*, 522 S.W.3d at 32. We sustain UTRGV's second issue.

## IV. Conclusion

Appellees' claims under the PIA are moot. Accordingly, we reverse the trial court's judgment and render judgment dismissing appellees' writ of mandamus in the trial court.

## All Citations

Not Reported in S.W. Rptr., 2021 WL 375429

## Footnotes

1     Pursuant to the PIA, Hernandez requested the following information from January 1, 2011 to the present:

        1. A copy of each and every offense or police report concerning Leila Hernandez;

        2. A copy of each and every investigative file concerning Leila Hernandez;

        3. A copy of each and every complaint or report made against Leila Hernandez;

        4. A copy of each and every inventory or record of tangible property seized from Leila Hernandez;

        5. A copy of each and every warrant issued concerning Leila Hernandez;

        6. A copy of each and every lab report concerning Leila Hernandez;

        7. A copy of each and every voice recording concerning Leila Hernandez;

        8. A copy of each and every video recording concerning Leila Hernandez;

        9. A copy of each and every witness statement concerning Leila Hernandez; and

        10. A copy of each and every statement of Leila Hernandez.

2     UTRGV was closed for the holidays from Thursday, December 22, 2016 through Monday, January 2, 2017.

3     Appellees asserted the information UTRGV produced was incomplete because there were redactions to that information. However, information is excepted from disclosure "if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code Ann. § 552.101.

4     Appellees also assert that a trial is necessary to determine the truthfulness or falsity of UTRGV's statements and that due to UTRGV's "bad faith, failure to produce information, delays in producing information, and false statements," Hernandez has incurred over $20,000 in attorney's fees. However, these claims are not cognizable under the PIA because the waiver of sovereign immunity is limited to mandamus relief for the disclosure of public information. *See* Tex. Gov't Code Ann. § 552.321 (allowing for suit for a writ a mandamus for the disclosure of public information), § 311.034 ("A statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

**End of Document**          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)

2020 WL 7703126

2020 WL 7703126
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas, Austin.

The CITY OF AUSTIN, Chief
Brian Manley, and the Austin
Police Department, Appellants
v.
Jane DOE, Appellee

NO. 03-20-00136-CV
|
Filed: December 29, 2020

FROM THE 419TH DISTRICT COURT OF
TRAVIS COUNTY, NO. D-1-GN-19-007388, THE
HONORABLE CATHERINE MAUZY, JUDGE
PRESIDING

**Attorneys and Law Firms**

Ana Marie Jordan, Jordan Law Office, 5101 Lorraine
Drive, Frisco, TX 75034, for Appellee.

Hannah Vahl, City of Austin Law Department, P. O.
Box 1546, Austin, TX 78767-1546, Sara Schaefer,
City of Austin Law Department, 301 W. 2nd St.,
Austin, TX 78701-4652, for Appellants.

Before Chief Justice Rose, Justices Baker and Kelly

## MEMORANDUM OPINION

Thomas J. Baker, Justice

**\*1** The City of Austin, the Austin Police Department
(APD), and APD Chief Brian Manley (collectively, the
City) appeal the trial court's order denying their plea
to the jurisdiction. Appellee, Jane Doe, individually
and on behalf of all others similarly situated, sued
appellants for declaratory and injunctive relief related
to their publication of booking photos (a.k.a. "mug
shots") on APD's website. For the following reasons,
we will affirm in part the trial court's order as to

Doe's ultra vires claim but reverse the order as to
her remaining claims and render judgment dismissing
those claims.

## BACKGROUND

In her live petition, Doe—a fifty-one-year-old "wife,
mother, professional and private citizen [who] has
never been convicted of a crime"—alleges that she
was recently arrested in Austin and accused of driving
while intoxicated (DWI), a misdemeanor charge she
denies. After Doe was transported to the Travis
County Jail, a sheriff's deputy told her that a booking
photo would be taken, but she objected to being
photographed "on the grounds that the booking photo
would likely be posted on the internet and introduced
into the public domain in violation of her right
to privacy and right to due process." The deputy
explained that the photo was being taken "solely to
confirm [her] identity for internal law enforcement
purposes and that if [she] did not submit [to having
her photo taken] she would be sent to a holding cell
until she acquiesced." After the photo was taken and
upon Doe's release from jail, the deputy instructed her
to inform APD that she "did not consent to the public
release" of the booking photo.

Doe alleges that the APD maintains a policy
—"authored, adopted, and enforced by" Chief Manley
—declaring that "[m]ug shots of adult arrestees are
subject to public release unless the release would
interfere with law enforcement interests or hinder
investigative efforts ... [and, the mug shots] are
publicly released automatically through the online
APD Booking Photo Database Search 13 days after
date of arrest." The policy is identified as APD General
Order 326.4 (GO 326.4), and Doe appended a copy
of it to her petition. Doe alleges that the policy
"also excepts from disclosure information considered
'restricted' including 'criminal history information'
and 'any information that is otherwise privileged or
restricted under state or federal law.' "

Doe complains that the APD posts photos on its
mug-shot website continuously for thirteen days from
original release date "without regard to whether an
individual has received due process for the crime
of which the individual is accused or whether the

City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)

2020 WL 7703126

crime is a felony, misdemeanor, violent or non-violent offense, or whether the accused is a fugitive from justice." Further, she contends that the website's search function permits searches for booking photos based on name, booking number, booking date, and charges; that photos can be "exported" without restriction, including the ability to print and download them onto personal computers where they can be manipulated, changed, and distributed; and that when the photo is downloaded, it contains no date identifying when it was taken or for what type of offense or whether the arrestee was charged or exonerated or whether the case was dismissed.

**\*2** Following her release from jail and before the mug shot was published on the APD website, Doe provided the City with written notice that she did not consent to the release or publication of her booking photo, citing the common-law doctrine of privacy and confidentiality under the Texas Public Information Act (PIA). She also requested that the City obtain an opinion from the Texas Attorney General regarding interpretation of the PIA's provisions concerning APD's planned release of the photo. The City responded that it would publish the photo on the website despite Doe's objections.

Doe immediately filed an original petition and motion for temporary restraining order and temporary injunction (TI) seeking to prohibit the City from releasing and publishing the photo. Shortly thereafter, the City and Doe executed a Rule 11 agreement prohibiting the release and publication of Doe's booking photo on the APD mug-shot website until the trial court heard and ruled on the motion for TI. In her live petition, Doe asserts causes of action for violation of her common-law right to privacy and violation of the PIA; seeks declarations under the Uniform Declaratory Judgments Act (UDJA), including that GO 326.4 is invalid; and contends that Chief Manley's posting of the photos on the APD website constitutes an ultra vires act. The City filed a plea to the jurisdiction, which the trial court heard contemporaneously with Doe's motion for TI. The trial court granted the TI and denied the plea to the jurisdiction. This appeal ensued. *See* Tex. Civ. Prac. & Rem. Code § 51.014.

## DISCUSSION

In its plea to the jurisdiction, the City contended that (1) it enjoys governmental immunity from Doe's cause of action for common-law invasion of privacy, an intentional tort, for which the Texas Tort Claims Act (TTCA) does not waive immunity; (2) Doe's claims under the UDJA seek merely an interpretation of the PIA, a claim for which the UDJA does not waive immunity, and the PIA does not waive its immunity under the facts alleged; and (3) Doe's ultra vires claim against Chief Manley is not viable because she is complaining solely about acts within the exercise of his official discretion.[1] We review the trial court's ruling on the plea to the jurisdiction de novo. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

### *Does the City enjoy governmental immunity from Doe's claims?*

A city, as a political subdivision of the state, is immune from suit and liability unless the state consents. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). Governmental immunity defeats a court's jurisdiction. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Where a government entity challenges jurisdiction on the basis of immunity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). To determine if the plaintiff has met that burden, we consider the facts the plaintiff has alleged and, to the extent it is relevant to the jurisdictional issue, the evidence the parties have submitted. *Whitley*, 104 S.W.3d at 542.

However, as Doe argues in her brief, a city has no immunity of its own but is only afforded the state's immunity when it is acting as the state's agent and performing governmental functions for public benefit. *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016) ("[A] city is not a freestanding sovereign with its own inherent immunity."); *see also Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019) ("Political subdivisions of the state—such as counties, cities,

and school districts—are not sovereign entities, but under the governmental-immunity doctrine, they share the state's immunity when performing governmental functions as the state's agent."). Political subdivisions are immune from suit for acts performed as a branch of the state but not for those acts performed in a proprietary, non-governmental capacity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). While the "proprietary-governmental dichotomy" is not a "clear one," "generally speaking, a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government,' while its governmental functions are 'in the performance of purely governmental matters solely for the public benefit.' " *Id.* (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)). "Acts that are proprietary in nature, therefore, are not done as a branch of the state, but instead for 'the private advantage and benefit of the locality and its inhabitants.' " *Wasson*, 489 S.W.3d at 433 (quoting *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884)).

**\*3** "Because governmental immunity extends 'as far as the state's [immunity] but no further,' no immunity exists for acts performed in a proprietary, non-governmental capacity." *Rosenberg Dev.*, 571 S.W.3d at 746–47 (quoting *Wasson*, 489 S.W.3d at 433–34). "Like *ultra vires* acts, acts performed as part of a city's proprietary function do not implicate the state's immunity for the simple reason that they are not performed under the authority, or for the benefit, of the sovereign." *Wasson*, 489 S.W.3d at 434. As a common-law doctrine, the judiciary determines whether immunity exists "in the first instance and delineates its boundaries." *Id.* at 435. "If immunity is applicable, *then* the judiciary defers to the legislature to waive such immunity." *Id.* We thus consider whether APD's posting of booking photos on its mug-shot website constitutes a proprietary or governmental function to determine whether the City enjoys governmental immunity in the first instance.

The Texas Supreme Court has explained that when the legislature has statutorily defined a particular activity as a governmental function in the TTCA, there is "no reason to think that the classification would be different under the common law." *Tooke*, 197 S.W.3d

at 343–44 (holding that plaintiffs' contract with city to provide curbside leaf and brush collection within city was encompassed by TTCA's inclusion of "garbage and solid waste removal, collection, and disposal" on list of municipalities' governmental functions). Thus, as our sister court has determined, we "need not consider classification of an activity under common law if the activity is defined by statute." *Martinez v. City of San Antonio*, 220 S.W.3d 10, 14 (Tex. App. —San Antonio 2006, no pet.). The TTCA expressly categorizes "police and fire protection and control" as a governmental function. Tex. Civ. Prac. & Rem. Code § 101.0215(a)(1). Therefore, if the action that Doe challenges falls within the category of "police protection and control," then it is a governmental function for which the City enjoys governmental immunity. *See Martinez*, 220 S.W.3d at 14.

Doe concedes that police protection and control generally—and even the release of "basic information related to herself or her arrest"—are "law enforcement actions authorized and mandated by state law" and thus constitute governmental functions. However, she attempts to distinguish the City's posting of the booking photos on the APD website from general police protection and control by framing the conduct as being in violation of state law (i.e., of her common-law right to privacy and of the PIA). Her argument, it appears, is that because the posting of booking photos purportedly violates her right to privacy and the PIA, it cannot, as a matter of law, constitute a governmental function. However, she does not cite any authority to support this argument, and we conclude that determination of this issue turns not on whether the challenged activity violates law but rather on whether the activity can reasonably be construed as police protection and control.

Our sister court in *Martinez* determined that a comprehensive program implemented and administered by a city police department to prevent and reduce crime constituted a governmental function even though, as the plaintiff contended, certain aspects of the program were proprietary in nature, such as providing counseling and job-training services to local residents to prevent and suppress gang activity and crime. *See id.* at 15–16. Citing to one of its prior opinions, the *Martinez* court held that a plaintiff "may not split various aspects of a [municipality's]

**City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)**

2020 WL 7703126

operation into discrete functions and recharacterize certain of those functions as proprietary." *Id.* at 15 (quoting *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied) (holding that city's contracting with vendor to sell alcohol at Alamodome was "logically characterized as part of the operation of the facility and must be considered a government function" in light of TTCA's inclusion of "civic, convention centers, or coliseums" in list of governmental functions)); *see also Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex. App. —Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994) (refusing to consider that some activities related to operation of city park, such as design and construction of erosion-control walls along creek with allegedly dangerous drop-offs lacking adequate warnings or barriers, might be proprietary where TTCA lists "parks and zoos" as governmental function). Similarly, we conclude that Doe may not characterize part of the City's policy of releasing information to the public as a proprietary function—that pertaining to booking photos—and the rest of its policy—that pertaining to the release of "basic information" related to one's arrest—as a governmental function, regardless of its alleged illegality. We therefore hold that the City's posting of the booking photos on the APD website constitutes a governmental function for which the City enjoys governmental immunity absent an applicable legislative waiver of immunity. *See Tooke*, 197 S.W.3d at 343–44; *Martinez*, 220 S.W.3d at 15–16. Doe contends that the PIA and the UDJA waive the City's immunity under the facts alleged.[2]

### *Does the PIA waive the City's immunity?*

 **\*4**  Doe contends that the PIA waives the City's immunity because she is "seeking to withhold information from a requestor." *See* Tex. Gov't Code § 552.325(a) ("A governmental body, officer for public information, or other person or entity that files a suit seeking to withhold information from a requestor may not file suit against the person requesting the information."). Importantly, however, she does not identify any "requestor," and the PIA section she cites clearly contemplates suits brought *by governmental bodies* (or their agents) *for their own efforts* to withhold information *from a specific request* for public information. *See id.* §§ 552.325(b) ("The governmental body, officer for public information,

or other person or entity that files the suit shall demonstrate to the court that the governmental body, officer for public information, or other person or entity made a timely good faith effort to inform the requestor ... of ... the existence of the suit ..., the requestor's right to intervene ..., [and] that the suit is against the attorney general ..."), .324(a) ("The only suit a governmental body may file seeking to withhold information from a requestor is a suit that: (1) is filed in a Travis County district court against the attorney general in accordance with Section 552.325; and (2) seeks declaratory relief from compliance with a decision by the attorney general issued under Subchapter G."). Other than section 552.325, Doe does not identify any other section of the PIA that purportedly waives the City's immunity from suit, and we have found none. Accordingly, we conclude that the trial court was without jurisdiction over Doe's PIA claim.

### *Does the UDJA waive the City's immunity?*

It is settled law that the UDJA does not grant a trial court subject-matter jurisdiction but is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see McLane Co. v. Texas Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 875 (Tex. App.—Austin 2017, pet. denied). The UDJA provides only a limited waiver of immunity when a plaintiff challenges the validity of a statute or ordinance. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010). It does not waive the state's or governmental body's immunity when a plaintiff seeks a declaration of her rights under a statute or other law. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). Because Doe is not challenging the validity of any statute or ordinance, we conclude that the trial court did not have subject-matter jurisdiction over her UDJA claim. *See id.*; *City of Dallas v. Sabine River Auth.*, No. 03-15-00371-CV, 2017 WL 2536882, at *4 (Tex. App. —Austin June 7, 2017, no pet.) (mem. op.).

### *Has Doe alleged a viable ultra vires claim against Chief Manley?*

While governmental immunity generally bars suit against Chief Manley as an agent of the City, it does not bar suit against him in his official capacity

City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)

2020 WL 7703126

for acting outside of his authority, that is, for ultra vires conduct. *See Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016). However, if a plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action and is barred by governmental immunity. *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 (Tex. App.—Austin 2010, no pet.). To determine if a plaintiff has pleaded a viable ultra vires action, the court must construe relevant statutory provisions that define the scope of the governmental body's legal authority, apply those statutes to the facts as pleaded by the plaintiff, and ascertain whether those facts constitute acts beyond the agency's legal authority. *City of New Braunfels v. Tovar*, 463 S.W.3d 913, 919 (Tex. App.—Austin 2015, no pet.). When, as here, the plea to the jurisdiction challenges the sufficiency of the pleadings rather than the existence of any of the jurisdictional facts alleged by the plaintiff, the court should make the jurisdictional determination as a matter of law based solely on the facts alleged by the plaintiff, which are taken as true and construed liberally in favor of jurisdiction. *Prewett v. Canyon Lake Island Prop. Owners Ass'n*, No. 03-18-00665-CV, 2019 WL 6974993, at *1 (Tex. App.—Austin Dec. 20, 2019, no pet.) (mem. op.) (citing *Miranda*, 133 S.W.3d at 225, 227).

Doe alleges that Chief Manley is acting ultra vires by voluntarily making public the booking photos, which she contends are confidential, in violation of the PIA. *See* Tex. Gov't Code §§ 552.007(a) ("This chapter does not prohibit a governmental body or its officer for public information from voluntarily making part or all of its information available to the public, *unless* the disclosure is expressly prohibited by law or *the information is confidential under law.*" (emphases added)), .101 (excepting from PIA's disclosure requirements "information considered to be confidential by law, either constitutional, statutory, or by judicial decision"); *see also id.* § 552.002 (broadly defining "public information"). Based on the plain language of section 552.007, if the booking photos are confidential, then Chief Manley's voluntary disclosure of them by posting them on the website would constitute an ultra vires act because he has no authority under the PIA to disclose confidential information; the act expressly prohibits the release of confidential

information. *See id.* § 552.007(a); *Houston Belt & Terminal Ry.*, 487 S.W.3d at 163 ("when an officer acts beyond his granted discretion—in other words, when he acts without legal authority—his acts are not protected"). Only when a government officer has "absolute discretion"—that is, free decision-making power without any constraints—is an ultra vires suit barred. *Houston Belt & Terminal Ry.*, 487 S.W.3d at 163. And, as a general rule, "a public officer has no discretion or authority to misinterpret the law." *Id.* (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding)).

**\*5** The City contends, as outlined in its plea to the jurisdiction, that Chief Manley has the discretion to determine whether booking photos are public or confidential because he has the "authority to interpret" the PIA and that Doe is merely complaining that he "misinterpreted" the PIA, for which an ultra vires claim does not exist. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."). However, the City points to no statute providing Chief Manley any discretion to determine what constitutes "confidential" information under the PIA, nor have we have found any, and the case law the City cites as support is distinguishable. *Cf. Hall v. McRaven*, 508 S.W.3d 232, 234 (Tex. 2017) (holding that ultra vires claim did not lie against university chancellor, to whom express authority was given by applicable rules, promulgated pursuant to Education Code, to interpret whether federal privacy laws required redaction of otherwise public information). Unlike in *Hall*, Chief Manley has not been expressly authorized by statute or rules promulgated thereunder to interpret whether information is "confidential" under the PIA. Therefore, if Chief Manley is posting booking photos on the APD website and threatening to post Doe's booking photos, and if the photos are confidential under the PIA, his act of posting them is ultra vires, and Doe has alleged a viable claim.

In her petition, Doe alleges that

> [t]he unrestricted access to plaintiff's booking photo would be highly objectionable to [p]laintiff, who is

**City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)**

2020 WL 7703126

a reasonable person, because it was taken without her consent, and over her objection to its public disclosure, and it contains a highly embarrassing depiction of her personal likeness, appearance, facial expression, and her vulnerability while being booked into jail after being accused of committing a criminal act—of which she claims she is innocent—after she was taken into police custody and deprived of her liberties, and when released to the public intimates guilt. Plaintiff further asserts that the public has no legitimate public interest in accessing her booking photo. She is not, for example, a governmental official, habitual offender or fugitive from justice. Consequently, the unrestricted public access and/or publication on the internet of her booking photo would be an unwarranted invasion of her personal privacy.

The PIA defines "confidential information" as information "considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code § 552.101. While neither the constitution nor any statute deems booking photos confidential, the Texas Supreme Court has determined that if release of information to the general public would invade a person's common-law right to privacy, then that information "should be deemed confidential by judicial decision" under the PIA. *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 683 (Tex. 1976). The court in *Industrial Foundation* outlined two requirements for whether particular information is "private" and thus confidential under the PIA: (1) it contains "highly intimate or embarrassing facts about a person's private affairs, such that its publication would be highly objectionable to a person of ordinary sensibilities," and (2) it is not "of legitimate concern to the public." *Id.* at 683–85. "If the information meets the first test, it will be presumed that the information is not of legitimate public concern unless the requestor can show that, under the particular circumstances of the case, the public has a legitimate interest in the information notwithstanding its private nature." *Id.* at 685.

Whether information at issue meets the first test is generally a fact issue to be determined by the factfinder. *See id.* at 683, 685–86 (deciding that affidavit raised fact issue concerning privacy doctrine when it alleged that claims filed with industrial-accident board contained information about private matters that would cause extreme embarrassment to injured claimant); *see also Adkisson v. Paxton*, 459 S.W.3d 761, 778 (Tex. App.—Austin 2015, no pet.) ("It was the Commissioner's burden to raise a fact issue precluding release of the [subject] documents. Without any evidence to support the Commissioner's claim that the requested information is protected by the common-law privacy doctrine, he has not carried his summary-judgment burden to show that the information is excepted from disclosure under PIA Section 552.101."); *Austin Chron. Corp. v. City of Austin*, No. 03-08-00596-CV, 2009 WL 483232, at *6–7 (Tex. App.—Austin Feb. 24, 2009, no pet.) (mem. op.) (holding that evidence was legally insufficient to support trial court's fact findings that police report was private and contained highly intimate or embarrassing facts where evidence was undisputed that report had already been made public).

**\*6** As already noted, the City did not challenge the existence of jurisdictional facts supporting Doe's ultra vires claim but merely argued that the facts alleged in her petition and the applicable law demonstrate that Chief Manley's publication of the booking photos on the APD website is not ultra vires because he has the authority to determine whether booking photos are confidential under the PIA, which argument we have already rejected. Therefore, taking Doe's factual allegations as true, as we must do, we conclude that she has alleged a viable ultra vires claim against Chief Manley, *see Miranda*, 133 S.W.3d at 227, and whether the booking photos are confidential is a merits determination on which we defer to the trial court to make in the first instance. We also note that, while Doe presented some evidence to support her request for a TI,[3] without a challenge by the City of the jurisdictional facts supporting her claim, Doe neither had the opportunity to fully develop the record on the fact question of whether her booking photos are confidential under the *Industrial Foundation* test, nor was she required to. *See Miranda*, 133 S.W.3d at 227; *cf. Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (noting TI's purpose is to preserve status quo of litigation's subject matter pending trial on merits and that to obtain TI, applicant must plead and prove "(1) a cause of action against defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim"). We conclude, therefore, that Doe

**City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)**

2020 WL 7703126

pleaded facts sufficient to affirmatively demonstrate that the trial court has jurisdiction over her ultra vires claim alleging that Chief Manley acted without legal authority in voluntarily posting the booking photos at issue on the APD website.

Moreover, we note that—despite the City's contention that "booking photos have never been held by the attorney general or a court in Texas to be 'confidential under law' "—the absence of a prior on-point judicial determination about the confidentiality of the booking photos at issue does not foreclose the possibility of such a determination in this case. *See Industrial Found.*, 540 S.W.2d at 683 ("[I]f a governmental unit's action in making its records available to the general public would be an invasion of an individual's freedom from the publicizing of his private affairs, then the information in those records should be deemed confidential by judicial decision."); *see also* Tex. Gov't Code § 552.101 (information is "confidential" if it has been so deemed by judicial decision). The City cites two attorney general opinions to support its argument. *See* Tex. Att'y Gen. OR2016-22153 (cursorily determining that particular requested booking photos did not meet *Industrial Foundation* test for confidentiality); Tex. Att'y Gen. ORD-616 (1993) (determining that mug shot "taken in connection with an individual's arrest for an offense for which he was subsequently convicted and is currently serving time" is not intimate or embarrassing). However, those opinions are not binding on this Court. *Austin Chron.*, 2009 WL 483232, at *6. Furthermore, ORD-616 is distinguishable because the individual whose photo was at issue had already been convicted of the offense, and OR2016-22153 does not specify any details about the particular mug shots at issue, offenses for which the individuals were arrested, or whether they were convicted.

We also conclude that the case from this Court that the City cites, *City of Carrollton v. Paxton*, is distinguishable both because it turned primarily on the fact that the individual at issue had been convicted of the crimes whose allegations were the basis for the arrest and because the party asserting that the mug shot at issue was confidential (there, the City of Carrollton) had merely asserted that a mug shot "categorically satisfies the common-law privacy standard" without, apparently, presenting any evidence

on the issue. *See* No. 03-13-00838-CV, 2016 WL 1566400, at *3 (Tex. App.—Austin Apr. 14, 2016, no pet.) (mem. op.). In contrast, Doe cites several recent federal cases analyzing the issue and determining that arrestees generally have rights to privacy with respect to their booking photos. *See, e.g., Detroit Free Press, Inc. v. United States Dep't of Just.*, 829 F.3d 478, 482 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2158 (2017) (overruling its prior twenty-year-old precedent and upholding Department of Justice's Freedom of Information Act policy categorizing booking photos as confidential on basis that individuals have "a non-trivial privacy interest in booking photos" in part because such photos "fit squarely within th[e] realm of embarrassing and humiliating information" and "convey *guilt* to the viewer"); *World Publ'g Co. v. United States Dep't of Just.*, 672 F.3d 825, 827–28 (10th Cir. 2012) (holding that detainees possess privacy interest in booking photos in part because "mugshots in general are notorious for their visual association of the person with criminal activity," "disclose unflattering facial expressions," and carry with them "a stigmatizing effect [that] can last well beyond the actual criminal proceedings" (citations omitted)); *Karantsalis v. United States Dep't of Just.*, 635 F.3d 497, 503 (11th Cir. 2011) (adopting district court's order holding that defendant has "a continuing personal privacy interest in preventing public dissemination of his booking photographs" in part because "a booking photograph does more than suggest guilt; it raises a unique privacy interest because it captures an embarrassing moment that is not normally exposed to the public eye").

**\*7** We conclude that Doe has alleged a viable ultra vires claim against Chief Manley and is entitled to a determination on the merits by the trial court in the first instance about whether the information at issue is "confidential." Accordingly, we hold that the trial court properly denied the City's plea to the jurisdiction as to Doe's ultra vires claim.

**CONCLUSION**

We affirm in part the trial court's order as to Doe's ultra vires claim against Chief Manley but reverse the order as to Doe's remaining claims against the City of Austin and APD and render judgment dismissing

**City of Austin v. Doe, Not Reported in S.W. Rptr. (2020)**

2020 WL 7703126

her claims against those parties because the trial court lacks jurisdiction over them.

**All Citations**

Not Reported in S.W. Rptr., 2020 WL 7703126

Footnotes

1     In its plea, the City also challenged the constitutional claims that Doe made in her earlier petitions, but she removed those claims in her second amended (live) petition, so the City does not raise its issues as to those claims on appeal.

2     Doe does not contend that the TTCA waives the City's immunity, as it is settled law that the TTCA does not waive immunity for intentional torts, which the invasion of privacy is. *See* Tex. Civ. Prac. & Rem. Code § 101.057 (providing that TTCA's waiver of immunity does not apply to claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Billings v. Atkinson*, 489 S.W.2d 858, 860–61 (Tex. 1973) ("[T]he invasion of privacy is a willful tort which constitutes a legal injury.").

3     Besides her own testimony, Doe called as witnesses a local criminal lawyer and the APD records manager. While the trial court admitted some exhibits, including booking photos of other individuals that APD had posted on its website, neither Doe nor the City sought to admit the booking photos of Doe herself.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2021 Thomson Reuters. No claim to original U.S. Government Works. 8

# EXHIBIT D

2020 WL 7640146
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas, Austin.

The FRANKLIN CENTER FOR
GOVERNMENT and Public Integrity
and Jon Cassidy, Appellants

v.

The UNIVERSITY OF
TEXAS SYSTEM, Appellee

NO. 03-19-00362-CV
|
Filed: December 22, 2020

FROM THE 53RD DISTRICT COURT OF
TRAVIS COUNTY, NO. D-1-GN-15-003417,
THE HONORABLE TIM SULAK, JUDGE
PRESIDING

**Attorneys and Law Firms**

Jennifer S. Jackson, Assistant Attorney General,
Financial Litigation, Tax, and Charitable Trusts
Division, P. O. Box 12548, Austin, TX 78711-2548,
Matthew R. Entsminger, Open Records Litigation,
Administrative Law Division, P. O. Box 12548,
Capitol Station, Austin, TX 78711, for Appellee.

Joseph R. Larsen, Gregor Wynne Arney, PLLC,
Bank of America Center, 700 Lousiana, Suite 3950,
Houston, TX 77002, for Appellants.

Before Justices Goodwin, Kelly, and Smith

**MEMORANDUM OPINION**

Chari L. Kelly, Justice

**\*1** The Franklin Center for Government and Public
Integrity and Jon Cassidy (collectively, the Franklin
Center) appeal the district court's summary judgment
in favor of The University of Texas System (the UT
System) ordering that information requested by the

Franklin Center related to an independent investigation
into the UT System's admissions policies was excepted
from disclosure under the Texas Public Information
Act (TPIA). *See* Tex. Gov't Code §§ 552.001-.353.
We reverse the district court's summary judgment and
render judgment that some of the requested documents
are not excepted from disclosure under the TPIA.

**BACKGROUND**

In August 2013, a member of the UT System Board
of Regents and members of the media raised questions
about the possible existence of undue influence in
the admissions process at The University of Texas at
Austin (UT Austin). The UT System Chancellor and
the Executive Vice Chancellor for Academic Affairs
tasked the Vice Chancellor and General Counsel,
Daniel Sharphorn, and the Associate Vice Chancellor
for Student Affairs, Wanda Mercer, with investigating
whether there did exist undue influence or outside
pressure in the UT Austin admissions process. The
investigation initially focused on the University of
Texas School of Law (UT Law School), but later
expanded to include undergraduate admissions.

Sharphorn and Mercer interviewed the UT Austin
President, his Chief of Staff, the current and former
Deans of UT Law School, the Assistant Dean
for Admissions and Financial Aid of UT Law
School, and other individuals affiliated with UT
Law School. They also reviewed undergraduate and
law school admissions data, seventy-seven letters
of recommendation sent by members of the state
legislature to then-President Bill Powers, and Powers's
responses to those letters. In May 2014, at the
conclusion of the investigation, Sharphorn and Mercer
finalized the "University of Texas System—U.T.
Austin Admissions Inquiry Report" (the Inquiry
Report). The Inquiry Report, which was released to the
public, noted that the investigation focused on letters of
recommendation "that are sent directly to the president
or a dean and are outside the prescribed application and
recommendation process." The investigation found
no evidence of a "quid pro quo[,] an exchange
of admissions decisions for favors"; no evidence
"of a systematic, structured, or centralized process
of reviewing and admitting applicants recommended
by influential individuals"; and no evidence of

overt pressure on Admissions Office staff to admit applicants based on the recommendations of persons of influence. The Inquiry Report did, however, conclude that admission decisions were likely impacted in some cases by the letters of recommendation and that the admission rates for applicants to whom the letters applied were significantly higher than for the rest of the applicant populations. The Inquiry Report further concluded that the disparities in admission rates could not reasonably be explained by factors of individual merit, such as grades, test scores, or other holistic considerations. The Inquiry Report determined that further investigation was unwarranted because "little would be gained by refining the data and attempting to identify explanatory variables that would produce a more precise estimate of the impact of legislator letters of recommendation." Instead, the Inquiry Report recommended that "the Chancellor and Executive Vice Chancellor for Academic Affairs work with institution presidents to ensure that all U.T. System institutions have incorporated the best practices in admissions processes that have been developed within the U.T. System and across the country." The Inquiry Report concluded that if the Board of Regents believed that there were questions that should and could be answered by a full investigation, then the Board of Regents should, after full and careful deliberation, make the decision about whether to conduct such an investigation.

 **\*2**  In June 2014, after the Inquiry Report was issued, a former Admissions official reported to the UT System Chancellor and its Vice Chancellor and General Counsel that the UT Austin Office of the President had at times exerted pressure on the UT Austin Office of Admissions to admit some applicants of lesser qualifications in response to external influences. That same month, the UT Austin President informed the UT System Chancellor that he had faced pressure over the admissions process from donors, alumni, and legislators and that, in certain cases, he had responded to that pressure by increasing the class size by the added number of people he chose to admit so that positions were not taken away from applicants already admitted. This new information caused the Chancellor to believe that an independent firm should be retained to more thoroughly and comprehensively review the admissions process.

In August 2014, the UT System and Kroll Associates, Inc. (Kroll) entered into an "Agreement Between University and Contractor" (the Agreement) whereby Kroll, identified in the Agreement as the "Contractor," would act as the independent firm to review the admissions process. The Agreement defined the Scope of Work as follows:

> The focus will be on an evaluation of the conduct of U.T. Austin, U.T. System, and U.T. System Board of Regents, (collectively "U.T.") officials and employees in performing admissions services, not on any external recommenders. U.T.'s responsibility to ensure integrity in the handling of admissions recommendations lies with the staff and officials within U.T., thus the charge is to determine if the conduct of U.T. officials is beyond reproach. Specifically, the investigation should determine if U.T. Austin's admissions decisions are made for any reason other than an applicant's individual merit as measured by academic achievement and officially established personal holistic attributes, and if not, why not.

> This charge is based on the premise that applicants should only be admitted to a public university based on their individual merit, i.e., academic achievement and officially established personal holistic factors. They should not gain advantage only because they are recommended outside the prescribed admissions process by an influential individual, whether that individual is a regent, U.T. System or U.T. Austin officer or staff member, member of the executive, legislative or judicial branch, or major donor, who adds no new substantive information about the applicant's personal merit. Any competing evidence or premise as to the basis for admissions should be identified so it can be openly debated.

The Agreement included a section defining the "Relationship of the Parties," which provided:

> For all purposes of this Agreement and notwithstanding any provision of this Agreement to the contrary, Contractor is an independent contractor and is not a state employee, partner, joint venturer, or agent of University. Contractor will not bind or attempt to bind University to any agreement or contract. As an independent contractor, Contractor is solely responsible for all taxes, withholdings, and

other statutory or contractual obligations of any sort, including workers' compensation insurance.

The Agreement also required Kroll to submit a final report to the "U.T. Austin General Counsel" that "describes the investigation methods employed and reports the investigators' factual findings."

Kroll conducted its investigation, during the course of which it reviewed data and documents provided to it by the UT System and conducted interviews of various individuals involved in the admissions process. The UT System explained in its brief that Kroll was provided "approximately 626,000 pages" of documents and that "the large volume was due to the way some of the documents were stored." Specifically, the UT System stated that several university employees and departments were on litigation hold status due to unrelated litigation and that the litigation hold was implemented "in a way that made it difficult to extract the correspondence Kroll requested, so the entire litigation hold file was provided instead." In its report, Kroll stated that it reviewed approximately 9,500 emails provided to it. After completing the investigation, Kroll submitted its Final Report in February 2015. The 101-page report detailed Kroll's findings, provided its recommendations, and suggested best practices. Specifically, Kroll's report states that while it "has not attempted to second-guess the merits of individual admissions decisions," it "found a lack of guidance for decision makers" and, in the report, "attempt[ed] to offer some suggested guidelines for future consideration and possible implementation." Kroll submitted its report to the UT System's General Counsel and the report was published on the UT System's website.

**\*3** After Kroll's report was published, the Franklin Center made a request under the TPIA for "all emails, interview transcripts and other documents provided to or obtained by Kroll investigators as part of their audit of admissions." The UT System requested an opinion from the Open Records Division of the Attorney General's office regarding whether the documents sought were required to be disclosed to the Franklin Center. In an informal letter opinion designated OR2015-14088, the Attorney General ruled that the information was part of a completed investigation subject to TPIA section 552.022(a)(1). *See* Tex. Gov't Code § 552.022(a)(1) (completed investigation

made of, by, or for governmental body not excepted from disclosure unless made confidential under other law). However, because the Texas Supreme Court has held that the Texas Rules of Evidence are "other law" for the purposes of section 552.022, the Attorney General addressed the UT System's assertion that the documents sought were protected by the attorney-client privilege under Texas Rule of Evidence 503. *See* Tex. R. Evid. 503 (lawyer-client privilege); *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001) (orig. proceeding) (Texas Rules of Evidence are "other law" within meaning of section 552.022). The Attorney General also considered the UT System's claims that the information requested was protected by common law and constitutional privacy, and other TPIA provisions. *See* Tex. Gov't Code §§ 552.101 (information considered to be confidential by law, either constitutional, statutory, or by judicial decision); .103 (litigation exception); .111 (deliberative process privilege). The Attorney General concluded that, with certain exceptions, the documents were excepted from disclosure to the Franklin Center.

The UT System then sued the Attorney General in Travis County district court challenging the portions of the Attorney General's letter ruling that ordered certain documents to be disclosed. *See id.* § 552.324 (governmental body may seek declaratory relief from compliance with decision by attorney general). The Franklin Center intervened in the suit seeking a declaratory judgment that all the documents were public information not excepted from disclosure and a writ of mandamus to compel the UT System to release the information. *See id.* §§ 552.321, .3215. While the litigation was pending, the UT System created a privilege log of documents that it had submitted to the Attorney General as a representative sample of the documents subject to the Franklin Center's TPIA request and asserted that all documents on the privilege log were protected by the attorney-client privilege.[1] The Franklin Center then filed an amended petition that narrowed the scope of documents it sought under the TPIA. Specifically, the Franklin Center's amended petition states that it "seeks only that information provided to the OAG as a representative sample identified by UT in its privilege log." Because the scope of the documents sought was thereby narrowed, the majority of the documents containing the exceptions for disclosure that were the subject of

the UT System's original petition against the Attorney General were no longer the subject of the Franklin Center's TPIA request and, consequently, the UT System's challenges to the Attorney General's ruling on that information were no longer at issue.

The documents identified on the privilege log that are the subject of this appeal were all either provided to Kroll by the UT System or created by Kroll in connection with its investigation.[2] The UT System groups the documents identified in the privilege log in three categories. First, documents labeled UTS-00001 through UTS-00146 consist of internal communications between UT System lawyers and UT System clients, UT Austin lawyers and UT Austin clients, and UT System and UT Austin clients and lawyers regarding matters unrelated to the Kroll investigation. Second, documents labeled UTS-00147 through UTS-00722 and UTS-00727 through UTS-00734 include interview questions and notes and summaries created by Kroll during Kroll's interviews of UT System and UT Austin employees and officials. Third, documents labeled UTS-0723 through UTS-0726 include draft correspondence from UT System General Counsel Daniel Sharphorn to UT employees about Kroll's interviews and drafts of other investigation-related documents as edited by Sharphorn.

**\*4** The UT System and the Franklin Center filed cross-motions for summary judgment regarding whether the information identified in the privilege log was excepted from disclosure because it was, in its entirety, protected from disclosure by Texas Rule of Evidence 503 as "confidential communications made for the purpose of facilitating the rendition of legal services to the client ... between the client or a representative of the client and the client's lawyer or a representative of the lawyer" or "between the client's lawyer and the lawyer's representative." Tex. R. Evid. 503(b)(1). The parties also joined issue on whether, aside from the attorney-client privilege, certain of the requested information constitutes confidential student and applicant information excepted from disclosure as well as personal contact information also excepted from disclosure. *See* Tex. Gov't Code §§ 552.101 (information considered to be confidential by law or judicial decision excepted from disclosure); .114 (excepting from disclosure information in "student

record," as term is defined by Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g(a)(4), at educational institution funded by state revenue); .117 (information that relates to home address, home telephone number, emergency contact information, or social security number of current or former official of governmental body excepted from disclosure); .137 (e-mail address of member of public provided for purpose of communication electronically with governmental body is confidential and not subject to disclosure). Finally, the UT System argued that one email described in the privilege log contained information that was confidential under Texas Health and Safety Code section 81.046. *See* Tex. Health & Safety Code § 81.046 (information related to cases of disease or health conditions is not public information under Government Code chapter 522).

After a hearing, the trial court rendered judgment granting the UT System's motion for summary judgment and denying the Franklin Center's. The Franklin Center perfected an appeal challenging that judgment.

## DISCUSSION

### *Attorney-Client Privilege*
Relevant to the circumstances here, the TPIA provides that a completed investigation made by or for a governmental body is public information and not excepted from disclosure unless it is expressly confidential under other law. Tex. Gov't Code § 552.022. The Texas Rules of Evidence are "other law" for the purposes of TPIA section 552.022. *See In re City of Georgetown*, 53 S.W.3d at 329. Texas Rule of Evidence 503(b)(1) protects:

> confidential communications made to facilitate the rendition of professional legal services to the client: (A) between the client or the client's representative and the client's lawyer or the lawyer's representative; (B) between the client's lawyer and the lawyer's representative; (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action; (D)

between the client's representatives or between the client and the client's representative; or (E) among lawyers and their representatives representing the same client.

Tex. R. Evid. 503(b)(1). An attorney's investigation may constitute legal services such that it falls within the attorney-client privilege. *See Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 334 (Tex. App.—Austin 2000 pet. denied). The relevant inquiry is whether the attorney was retained to conduct an investigation related to the rendition of legal services. *Id.* Further, the attorney-client privilege protects not only the communications between the lawyer and the client, but also communications between their representatives. *Id.*; *In re XL Specialty Ins.*, 373 S.W.3d 46, 49-50 (Tex. 2012) (orig. proceeding). A "lawyer's representative" is "one employed by the lawyer to assist in the rendition of professional legal services." Tex. R. Evid. 503(a)(4)(A); *In re XL Specialty Ins.*, 373 S.W.3d at 56 & n.17 (explaining that rule 503(a)(4) defines "lawyer's representative" as employee of lawyer or accountant); *IMC Fertilizer, Inc. v. O'Neill*, 846 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1993, no writ) (discussing rule 503(b) and concluding that investigator was representative of attorney covered by attorney-client privilege).

Whether information is subject to the TPIA and whether an exception to disclosure applies to the information at issue are questions of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *Arlington Indep. Sch. Dist. v. Texas Att'y Gen.*, 37 S.W.3d 152, 163 (Tex. App.—Austin 2001, no pet.). It is the governmental body's burden to prove that an exception to public disclosure applies to the information at issue, *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 323 (Tex. App.—Austin 2002, no pet.), and exceptions to disclosure are narrowly construed, *Texas State Board of Chiropractic Examiners v. Abbott*, 391 S.W.3d 343, 347 (Tex. App.—Austin 2013, no pet.). Thus, the UT System had the burden to establish that the documents at issue were privileged under Rule 503. *See Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996).

**\*5** The Franklin Center first argues that the UT System failed to carry its burden of demonstrating that the documents listed on the privilege log are, in their entirety, protected by the attorney-client privilege.[3] In

its summary judgment motion, the UT System argued that each document identified on the log constituted a "communication, created to facilitate the rendition of professional legal services." Documents labeled UTS-00001 through UTS-00146 are emails containing internal communications between UT System lawyers and UT System clients, UT Austin lawyers and UT Austin clients, and between UT System and UT Austin clients and lawyers regarding matters unrelated to the Kroll investigation. These internal communications, which the UT System maintains were privileged attorney-client communications, were provided to Kroll by the UT System. The Franklin Center argued that this voluntary disclosure of the attorney-client communications to Kroll waived any attorney-client privilege that would otherwise protect those communications from disclosure. *See* Tex. R. Evid. 511(a) (waiver by voluntary disclosure); *Paxton v. City of Dallas*, 509 S.W.3d 247, 262-64 (Tex. 2017) (discussing waiver of attorney-client privilege in context of TPIA). "It is an exception to the general rule that the [attorney-client] privilege is waived if the lawyer or client voluntarily disclose privileged communications to a third party." *XL Specialty Ins.*, 373 S.W.3d at 50. The UT System countered that its voluntary disclosure of the communications to Kroll did not waive the attorney-client privilege because Kroll was not a "third party" but a "lawyer's representative" within the meaning of Rule 503(a)(4).

The UT System describes documents labeled UTS-00147 through UTS-00722 and UTS-00727 through UTS-00734 as interview questions and notes created by Kroll during Kroll's interviews of UT System and UT Austin employees and officials. The UT System argues that these documents are privileged attorney-client communications because they constitute communications made between the UT System's employees and officials and Kroll, acting as a "lawyer's representative." Similarly, the UT System argues that documents labeled UTS-00723 through UTS-00726, which it characterizes as "draft communications from UT System General Counsel Dan Sharphorn to interviewees that show Mr. Sharphorn's redline edits," are, despite having been shared with Kroll, protected by the attorney-client privilege because that privilege covers "draft documents and communications shared among persons

within the privilege to facilitate the rendition of legal services."

The linchpin of the UT System's claim of the attorney-client privilege with respect to each document listed on the privilege log is its assertion that Kroll acted as a "lawyer's representative"—i.e., one "employed by the lawyer to assist in the rendition of professional legal services," *see* Tex. R. Evid. 503(a)(4)(A)—in connection with its investigation of the admissions practices. In the trial court, the UT System relied on the following facts to demonstrate that Kroll was a "lawyer's representative." First, the UT System presented two affidavits of Daniel Sharphorn, Vice Chancellor and General Counsel for the UT System. Sharphorn averred that in August 2014, while he was the University's General Counsel and acting "under the authority of and at the direction of" the UT System's Chancellor, he hired Kroll[4] to conduct an "independent investigation" into concerns raised about the admissions practices at UT Austin. While the Kroll investigation was focused on individuals internal to the UT System, Sharphorn instructed Kroll to notify him if "anything came to light that raised any serious concern, 'such as evidence of a quid pro quo or a threat from a recommender.' "[5] Sharphorn reviewed "the documents gathered by Kroll in relation to its investigation" to "evaluate the potential application of federal and state privacy laws."[6] Although the UT System argues in its brief that Sharphorn "relied on the Kroll investigation to determine whether anyone affiliated with UT System or UT Austin engaged in conduct that violated the law or required disciplinary action," Sharphorn's affidavit contains no such statements.[7] The UT System also relies on the following facts stated in the affidavit of Chancellor William H. McRaven. McRaven acted as the chief executive officer of the UT System and was responsible for the operation of the UT System and its member institutions. McRaven averred that his predecessor, Francisco Cigarroa, authorized Sharphorn to hire Kroll to conduct an "independent investigation into admissions practices" at UT Austin. After receiving the Kroll report, McRaven "read [it] several times" and spoke with Sharphorn, "from whom [he] sought legal advice." McRaven averred that: "After careful review and consideration [ ] I sent a letter to the Board of Regents rendering my decision that then-UT Austin President Bill Powers would not

be subject to disciplinary action because Kroll reported that there was no violation of law, rule, or policy, and I, therefore, determined that his conduct did not rise to the level of willful misconduct or criminal activity." The UT System also relies on the affidavit of Ana Vieira Ayala, the UT System's Assistant General Counsel, Legal Expert, and Information Coordinator. Ayala averred that the documents the UT System seeks to withhold all constitute "communications ... made for the purpose of facilitating the rendition of legal services."[8] The UT System argues that, taken together, this evidence demonstrates that its attorney, Sharphorn, "hired Kroll to conduct an investigation to enable Sharphorn to better advise his clients" and that, consequently, Kroll is a "lawyer's representative" as that term is defined in the Texas Rules of Evidence. *See* Tex. R. Evid. 503(a)(4)(A) (defining "lawyer's representative" as "one employed by the lawyer to assist in the rendition of professional legal services").

 **\*6** The UT System did not present evidence sufficient to meet its burden to show that Kroll was employed by a lawyer, Sharphorn, to "assist in the rendition of professional legal services" by that lawyer to his client, the UT System. *See City of Fort Worth*, 86 S.W.3d at 323 (explaining that it is governmental body's burden to prove that exception to public disclosure applies to information at issue); *City of Houston v. Paxton*, No. 03-15-00093-CV; 2016 WL 767755, at \*3 (Tex. App.—Austin Feb. 23, 2016, no pet.) (mem. op.) ("To make a prima facie showing of the applicability of a privilege, a party must produce evidence to support it."); *see also Dallas Morning News*, 22 S.W.3d at 357 (stating that whether exception to disclosure applies to information at issue is question of law). Thus, the UT System failed to produce evidence to support its contention that Kroll was acting as a "lawyer's representative" such that communications made to it and information shared with it are protected by Texas Rule of Evidence 503.

The record does not support the UT System's assertion that Kroll was hired to assist in the rendition of any legal services. Rather, undisputed evidence demonstrates that Kroll was hired to conduct an independent investigation and provide recommendations for policy and procedural changes in the context of the UT System's self-imposed mission of ensuring that the admissions process is administered

with integrity and fairness. That this was the purpose of the Kroll investigation is reflected both in the Scope of Work itself, which recites that "U.T.'s responsibility to ensure integrity in the handling of admissions recommendations lies with the staff and officials within U.T., thus the charge is to determine if the conduct of U.T. officials is beyond reproach," as well as in the content of the Final Report, which includes recommendations and suggested best practices for improving the UT System's admissions practices. The Final Report includes no legal advice, and the record does not support the UT System's assertion that the investigation was conducted for the purpose of rendering legal services to the UT System. Sharphorn stated in his affidavit that "[b]ased on the results and the recommendations of the admissions investigations and reports, the UT System administration proposed new admissions policy for the Academic Institutions of the University of Texas System." It is undisputed that the Kroll investigation was undertaken to determine facts, practices, and policies relating to admissions. There was no evidence that the UT System was concerned about exposure to legal liability resulting from the admissions practices it retained Kroll to investigate. The fact that Sharphorn or others within the UT System reviewed the Final Report to make separate decisions about whether to take disciplinary action against any officers or employees does not convert Kroll's investigation into one done for the purpose of facilitating the rendition of legal services.

The Kroll report was intended to be, and was, made public and there was no evidence presented to support the notion that either the report or the investigation were done in the context of advising the UT System whether any of the facts, practices, or procedures that were discovered would expose the UT System to potential legal liability. There is no evidence that any lawyer's expertise helped define the scope of Kroll's inquiry or which avenues were appropriate to pursue. Instead, the Kroll report states that "[a]though there was some pushback on the scope and extent of requested documentation, all discussions regarding the nature of our requests and documentation were cordial and professional." The investigation was repeatedly referred to by the UT System as an "independent" one. *Cf. Harlandale Indep. Sch. Dist.*, 25 S.W.3d at 334 (excepting from disclosure independent investigation by attorney who was

functioning as attorney throughout employment). The only legal advice that the record reflects was rendered by Sharphorn to the UT System in connection with the Kroll investigation was (1) whether information provided to Kroll was protected by the Family Educational Rights and Privacy Act in the context of Vice Chancellor Wallace Hall's request to review the documents provided by the UT System to Kroll, and (2) whether the conduct discovered by Kroll during the course of its investigation would serve as the basis for disciplinary action against then-UT Austin President Bill Powers. *Cf. In re Fairway Methanol LLC*, 515 S.W.3d 480, 485-86 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (report of investigative team charged with providing company with business and legal advice with respect to potential termination of employees was privileged because the investigation was also for purpose of assessing potential liability in litigation and defenses to anticipated regulatory proceedings). Because the UT System failed to provide proof that would support that Kroll was employed to assist a UT System attorney in the rendition of legal services, we conclude that the communications in question between Kroll and the UT System are not protected by the attorney-client privilege. Tex. R. Evid. 503(a)(4)(A), (b)(1); *cf. In re Houseman*, 66 S.W.3d 368, 371 (Tex. App.—Beaumont 2001, orig. proceeding) (psychiatrist retained to assess person's mental competency in guardianship proceeding was employed to assist in rendition of professional legal services); *Wright v. State*, 374 S.W.3d 564, 579 (Tex. App.—Houston [14th Dist.] 2012, pet ref'd) (doctor retained by defendant's trial counsel to evaluate defendant's mental state to assist in defense against murder charge was "lawyer's representative").

**\*7** Because the UT System failed to present evidence that supported it's contention that Kroll acted as a "lawyer's representative," the UT System waived any attorney-client privilege as to the documents labeled UTS-00001 through UTS-00146 and UTS-00723 through UTS-00726 when it voluntarily disclosed those documents to Kroll. *See* Tex. R. Evid. 511(a); *In re XL Specialty Ins.*, 373 S.W.3d at 50. For the same reason, the attorney-client privilege does not cover the interview questions and notes Kroll created when conducting its investigation. *See City of Houston*, 2016 WL 767755, at \*1, 4 (holding that City did not meet burden and that trial court did not err in granting

summary judgment and ordering certain information related to investigation was subject to disclosure under TPIA); *cf. O'Neill*, 846 S.W.2d at 592 (concluding that investigator was representative of attorney covered by attorney-client privilege).

### *FERPA/Confidential Information*

The Franklin Center also argues that the trial court erred if it relied on either FERPA or another right to privacy to conclude that any information or documents described in the privilege log were excepted from disclosure. *See* Tex. Gov't Code §§ 552.101 (information is excepted from disclosure if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision); .114 (confidentiality of student records). When providing the Attorney General with the documents listed on the privilege log, the UT System, relying on FERPA, redacted all information it asserted was related to or identified students or applicants. *See* 20 U.S.C. § 1232g.[9] In the letter ruling, the Attorney General stated:

> The United States Department of Education Family Policy Compliance Office (the "DOE") has informed this office FERPA does not permit state and local educational authorities to disclose to this office, without parental or an adult student's consent, unredacted, personally identifiable information contained in education records for the purpose of our review in the open records ruling process under the Act. The DOE has determined FERPA determinations must be made by the educational authority in possession of the educational records.

This Court has previously held that because determinations about disclosure of FERPA-protected information must be made by the institution from whom it is requested, "neither this Court, nor the trial court, nor the Office of the Attorney General of Texas is the proper entity" to interpret FERPA's application to an educational institution's records. *See B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-16-00710-CV, 2018 WL 454783, at *8 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.). Not having been provided the withheld student-or applicant-related information, the Attorney General did not review it and did not make any ruling or decision regarding whether it constituted information covered by FERPA or by any other privacy rights. The documents presented to the trial

court for in camera inspection were copies of the redacted documents that had been provided to the Attorney General. Thus, the trial court similarly could not have reviewed the student-or applicant-related information and, consequently, could not have made a determination about whether the redacted information constituted information covered by FERPA or other privacy rights. It follows, therefore, that the trial court's order that the UT System could withhold the documents described on the privilege log could not have been based on the nature or content of any of the redacted material included therein. The trial court's order cannot be interpreted as a determination one way or another about whether any documents on the privilege log could be withheld based on FERPA or any constitutional or other right to privacy that may protect the redacted information. Because it is apparent that the trial court did not base its ruling on the applicability of FERPA or any other privacy law, there is no trial court ruling or decision on that issue for this Court to review.[10] Consequently, we do not reach the issue of whether the UT System must provide the Franklin Center with the information it has withheld from disclosure under sections 552.101 or 552.114.[11]

## CONCLUSION

**\*8** Having determined that Kroll was not a "lawyer's representative" as that term is defined in Texas Rule of Evidence 503, we conclude that none of the documents identified on the UT System's privilege log are covered by the attorney-client privilege set forth in rule 503. *See* Tex. R. Evid. 503. Consequently, the documents identified on the UT System's privilege log are not "made confidential" by "other law" within the meaning of Texas Government Code section 552.022. *See* Tex. Gov't Code § 552.022. We reverse the trial court's summary judgment in favor of the UT System that the documents identified on the privilege log are protected by the attorney-client privilege and not subject to disclosure under the PIA. We do not reach the issue of whether the information redacted from the documents identified on the privilege log is excepted from disclosure under Texas Government Code section 552.101 or 552.114. We render judgment that the documents identified on the UT System's privilege log, as redacted and exclusive of information withheld pursuant to Texas Government Code sections 552.117

and 552.137 and Texas Health and Safety Code section 81.046, are not excepted from disclosure under the PIA and must be disclosed as public information.

**All Citations**

Not Reported in S.W. Rptr., 2020 WL 7640146

Footnotes

1 Section 552.301(e)(1)(D) of the Texas Government Code permits a governmental body seeking an Attorney General decision about whether requested information is excepted from disclosure under the TPIA to submit representative samples of the information if a voluminous amount of information was requested. Tex. Gov't Code § 552.301(e)(1)(D). The UT System had submitted a representative sample to the Attorney General.

2 The documents identified in the privilege log were submitted to the trial court for in camera inspection. *See id.* § 552.3221 (information at issue may be filed with court for in camera inspection, and on receipt of information court shall enter order that prevents release to or access by any person other than court, reviewing court of appeals, or parties permitted to inspect information pursuant to protective order).

3 The parties do not dispute the facts relevant to the determination of whether the information fell within the attorney client-privilege. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) ("Because the parties do not dispute the relevant facts, this is a proper case for summary judgment"); *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674 (Tex. 1995) ("A & T's request does not raise factual issues about the nature of the information sought."); *University of Tex. Sys. v. Paxton*, No. 03-14-00801-CV, 2017 WL 1315374 (Tex. App.—Austin Apr. 7, 2017, no pet.) (mem. op.); *City of Houston v. Paxton*, No. 03-15-00093-CV, 2016 WL 767755, at *3 (Tex. App.—Austin Feb. 23, 2016, no pet.) (mem. op.).

4 In one of his two affidavits Sharphorn averred that he hired Kroll to conduct the independent investigation. In the other affidavit, Sharphorn averred that UT System Chancellor Francisco Cigarroa hired Kroll. The Agreement was signed on the UT System's behalf by Scott C. Kelley, Executive Vice Chancellor for Business Affairs.

5 Sharphorn averred that Kroll did not report anything that raised "serious concern."

6 Sharphorn averred that after conducting his review, he determined that those documents "contain certain personally identifiable student information that is protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA")."

7 The paragraph of Sharphorn's affidavit that the UT System cites to support this assertion states that:
William H. McRaven, who began his service as Chancellor of the UT System in January 2015 ("Chancellor McRaven"), received and reviewed the results of the Kroll Report. On February 9, 2015, Chancellor McRaven sent a letter to the UT System Board of Regents (the "Board") rendering his decision that then-UT President Bill Powers would not be subject to disciplinary action because Kroll determined that his conduct did not rise to the level of willful misconduct or criminal activity.

8 Ayala does not elaborate on the nature of the legal services involved. Many of the documents the UT System seeks to withhold are communications between UT System lawyers and others about matters unrelated to the inquiry into admissions practices, including unrelated litigation. Thus, it is not clear whether the "legal services" referred to in Ayala's affidavit were rendered in connection with the admissions inquiry or with unrelated litigation.

9 Under FERPA, the term "education records" means records, files, documents, and other materials that contain information directly related to a student and are maintained by an educational agency or institution or by a person acting for such agency or institution. *See* 20 U.S.C. § 1232g(a)(4)(A).

10 FERPA creates no private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 390 (2002) (holding that "FERPA's nondisclosure provisions" do not create implied private right of action and do not create enforceable rights under section 1983); *see also B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-16-00710-CV, 2018 WL 454783, at *8 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op). Accordingly, if the Franklin Center believes that the UT System has not properly complied with FERPA, it may file a complaint with the Department of Education. *See* 20 U.S.C. § 1232g(g) ("The Secretary [of the Department of Education] shall establish or designate an office and review board within the Department for the purpose of investigating, processing, reviewing, and adjudicating violations of this section and complaints which may be

filed concerning alleged violations of this section."). But, even if before it, neither this Court, nor the trial court, may be asked to "second-guess" the UT System's FERPA determinations. *B.W.B.*, 2018 WL 454783, at *8.

11    The UT System also sought to withhold information contained in the documents identified on the privilege log based on its contention that the information was excepted from disclosure by Texas Government Code sections 552.117 and 552.137 and by Texas Health and Safety Code section 81.046. *See* Tex. Gov't Code § 552.117 (confidentiality of certain addresses, telephone numbers, social security numbers, and personal family information), .37 (confidentiality of certain email addresses); Tex. Health & Safety Code § 81.046 (confidentiality of reports, records, and information that relate to suspected cases of diseases or health conditions). The Franklin Center did not challenge the UT System's withholding of information it contends is exempted from disclosure under these statutes.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Karen Mallios on behalf of Jose de la Fuente
Bar No. 00793605
kmallios@lglawfirm.com
Envelope ID: 52740087
Status as of 4/22/2021 3:30 PM MST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Henneke | | rhenneke@texaspolicy.com | 4/22/2021 2:59:10 PM | SENT |
| William A.Faulk, III | | cfaulk@lglawfirm.com | 4/22/2021 2:59:10 PM | SENT |
| Yvonne Simental | | ysimental@texaspolicy.com | 4/22/2021 2:59:10 PM | SENT |
| Lambeth Townsend | | ltownsend@lglawfirm.com | 4/22/2021 2:59:10 PM | SENT |
| Michael E.Lovins | | Michael@LTLegalTeam.com | 4/22/2021 2:59:10 PM | SENT |
| Angela Reyna | | angela@ltlegalteam.com | 4/22/2021 2:59:10 PM | SENT |
| Jose E.de la Fuente | | jdelafuente@lglawfirm.com | 4/22/2021 2:59:10 PM | SENT |
| Aaron Barnes | | abarnes@texaspolicy.com | 4/22/2021 2:59:10 PM | SENT |